# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1134

_____

| | | |
|---|---|---|
| Patti L. Butts, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Continental Casualty Company; | * | |
| Michael Foods, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 21, 2003

Filed: February 9, 2004

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Patti Butts appeals the district court's[1] grant of summary judgment to Continental Casualty and her employer, Michael Foods, in this ERISA denial-of-benefits case. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I.    BACKGROUND

Butts worked at Michael Foods as a poultry housekeeper.  Her job consisted of standing and walking for up to four hours per day, lifting up to two pounds, carrying up to ten pounds, and pushing or pulling up to thirty pounds. Butts's last day of work at Michael Foods was June 24, 2000.

On July 10, 2000, Butts underwent surgery to treat sphincter of Oddi dysfunction.  She suffered complications from that surgery, including chronic abdominal and leg pain, and needed additional surgery later in July.  Butts saw several doctors in South Dakota and Rochester, Minnesota, from July through December of 2000.

Butts attended physical therapy for leg and abdominal pain from September 26 through October 25, 2000.  In November 2000, the record suggests that Butts did not receive medical attention.  She was scheduled to receive more physical therapy in early November, but the record indicates that Butts did not attend scheduled therapy sessions due to difficulties with her daughter, and following discussions with another doctor that she should not continue the therapy.  In October 2000, Butts had obtained a referral to Mayo Clinic, and she underwent minor surgery at the Mayo Clinic on December 4, 2000.  She was released the next day with "no restrictions," no "ongoing therapy," and "[n]o further intervention . . . necessary at this time for Mrs. Butts' abdominal pain and sphincter of Oddi dysfunction."  Butts's treating physician, Dr. Trail, stated on December 4, 2000, that Butts had no physical limitation, "should be able to return to work soon," and that she "may return to work once cleared by physical therapy @ Mayo Clinic."

In November 2000, Butts filed a claim under Continental Casualty Company's long-term disability plan offered through her employment. Continental denied Butts's claim because she did not meet the plan requirement of total disability during a 180-

day elimination period. The elimination period begins at the alleged onset of the claimant's disability and ends 180 days later, the first day on which benefits are due under the plan. To receive benefits, a claimant must be totally disabled and continuously unable to perform the functions of her job during this 180-day period. Butts alleged that onset of disability began on June 24, 2000; thus, the 180-day elimination period ended on December 24, 2000. Continental contended that Butts ceased to be totally disabled on October 25, 2000.

Butts appealed the initial decision to the plan's appeals committee, and submitted further materials from her treating physician which indicated that Butts continued to have problems in February 2001. The appeals committee upheld the denial of benefits, concluding that because Butts was released from the hospital without any restrictions following the December 4, 2000, procedure, Butts "was not unable to return to her occupation based on the medical records prior to the end of the elimination period on December 24, 2000."

Butts filed suit in state court, and the defendants removed the case to federal court because Butts's claim for employment benefits was governed by ERISA, 29 U.S.C. §§ 1001 et seq. In support of her claim, Butts argued that she never ceased being disabled from June 24 through December 24, 2000, and that she continued to be totally disabled beyond the elimination period. Butts also offered the affidavit of her treating physician, Dr. Trail, who opined that Butts was continuously disabled from July 2000 through July 2002, when the affidavit was signed. However, this document was not part of the administrative record. Butts introduced this and other affidavits as evidence in the district court proceedings. Applying a de novo review, the district court found that the plan had not wrongfully denied benefits, and granted summary judgment in favor of Continental.

## II.   DISCUSSION

We review a district court's grant of summary judgment de novo, and view the record in the light most favorable to the nonmoving party. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). Further, "[w]e review the district court's determination of the standard of review de novo." Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002).[2]

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan contains this discretionary authority language, we review for an abuse of discretion. Id.

Butts argues that the de novo standard of review is appropriate because the plan does not *clearly* give the plan administrator or fiduciary discretionary authority to determine eligibility benefits. Butts advances this argument because of plan language which states that "[t]he Administrator and other Plan fiduciaries have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan." Butts apparently argues that it is not sufficiently clear *who* has discretion based on this language.

_____

[2]We reject Butts's argument that Continental is precluded from advocating an abuse of discretion standard of review because it did not cross-appeal the district court's decision to apply a de novo standard. Continental does not seek to enlarge its rights or lessen Butts's rights; as the prevailing party, it simply seeks affirmance on slightly different grounds than those relied upon by the court below. Therefore, no obligation to cross-appeal exists. See Wycoff v. Menke, 773 F.2d 983, 985 (8th Cir. 1985) (holding that defendant did not need to cross-appeal the district court's adverse determination regarding a statute of limitations defense when the district court had ruled in defendant's favor on other grounds).

The plan is entitled to the deferential standard of review as specified in Bruch if the plan gives its administrators discretion to interpret and implement it. The plan need not spell out in intricate detail who has the discretion, other than to specify that those charged with implementing it will have such discretion. Continental's plan language is nearly identical to that discussed by the Bruch Court–the only difference is that Continental's plan has the word "and" instead of "or" between "Administrator" and "other Plan fiduciaries." That distinction is not material. The purpose of Continental's plan language can only be to give deference to eligibility determinations and to give those in charge of the plan the power to construe uncertain terms. Bruch, 489 U.S. at 111. Thus, the plan contains a sufficiently clear delegation of discretion, and we therefore apply the abuse of discretion standard of review.[3] See, e.g., Shipley v. Arkansas Blue Cross and Blue Shield, 333 F.3d 898, 901 n.4 (8th Cir. 2003) (holding that the plan language, the "Company acting on behalf of the Plan shall have authority and full discretion to determine all questions arising in connection with the Employee's insurance benefits" was sufficient to invest a "plan administrator" with abuse of discretion authority) (internal quotations omitted).

To apply the abuse of discretion standard, we look to whether the plan fiduciaries acted consistently with the ERISA-qualified plan's goals, and whether the plan's interpretation was internally inconsistent or contrary to the plan's clear language. Buttram v. Central States S.E. and S.W. Areas Health and Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996). Further, we may consider whether an administrator has interpreted the same or similar provisions consistently in the past. Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992). Under the

---

[3]At oral argument, Butts argued that a less deferential standard of review due to a conflict of interest might apply, based on Woo, 144 F.3d at 1160-61. This argument was not advanced in the briefs and will not be considered on appeal. See Fed. R. App. P. 28(a)(9)(A) ("appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies").

abuse of discretion standard, the court must uphold the plan administrator's construction if it is reasonable. Shipley, 333 F.3d at 901.

We hold that the plan administrators met the above-mentioned standard and did not unreasonably deny benefits. Butts included her treating physician's records with her claim for benefits in November 2000, and Continental obtained further documentation from the Mayo Clinic and Butts's physical therapist in Sioux Falls. Continental interviewed Butts on several occasions and continued to follow up with her physicians into January 2001. Thus, the record shows that Continental thoroughly reviewed Butts's claim file in an attempt to understand her complex symptoms and physical condition. There is no evidence that the administrators' interpretation of the plan's elimination period was internally inconsistent or contrary to plan language. Nor is there any evidence that administrators interpreted similar plan language inconsistently in the past. Continental reasonably determined that the medical evidence, including a note from Butts's treating physician, indicates that Butts was not continuously disabled from June 24, 2000, through December 24, 2000, because she was released from Mayo Clinic on December 5, 2000, with no restrictions.

Butts's most forceful argument is that the record does not support the plan administrator's initial decision regarding the date of October 25, 2000. As previously stated, this is the last date that Butts attended physical therapy, though the therapist's notes indicate that Butts was supposed to attend more, and the therapist did not release Butts from therapy without restrictions on that date. However, the record does not show that Butts received any medical treatment during the month of November, which tends to support the plan administrator's initial decision, especially under our standard of review. Furthermore, the appeals council clearly relied upon both the October 25 and December 4-5, 2000, dates as benchmarks in the 180-day elimination period.

Undisputably, Butts's condition took a turn for the worse shortly after the elimination period ended. The record indicates that Butts told Continental representatives that she was still in pain and on pain medications on December 26, 2000. Butts again began treatment at the Mayo Clinic for abdominal pain on January 10, 2001. And, Butts underwent more surgery in February 2001. While this turn of events is unfortunate, the fact remains that the disability policy requires a 180-day period of total and *continuous* disability. Butts's treating physician and the Mayo Clinic released Butts with no restrictions on December 5, 2000, nineteen days shy of the end of the elimination period. Whether Butts became completely disabled again during the next nineteen days is immaterial. "Continuous" means "uninterrupted in time; without cessation." Random House Webster's Unabridged Dictionary 440 (2d ed. 1997). Butts's totally disabled condition *was* interrupted in time from June 24, 2000, through December 24, 2000. Thus, Butts cannot meet the 180-day plan requirement and the decision to deny benefits was reasonable.

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____