# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3000

_____

K.B.,

*Plaintiff - Appellant*,

v.

Michael Waddle; Jeff Hall; Stephanie Howerton; Sara Holzmeier,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: June 12, 2014
Filed: August 20, 2014

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

K.B. is a juvenile who was sexually assaulted at a public swimming pool by another juvenile in 2003. K.B. sued several public employees, alleging that they were aware of a threat by the assailant but failed to take steps to prevent the abuse. She brought a federal constitutional claim based on the Due Process Clause and state-law

negligence claims. The district court[1] dismissed all claims either on the pleadings or on summary judgment. K.B. appeals, and we affirm.

I.

We recite the facts in the light most favorable to K.B. From the fall of 2002 through the spring of 2003, K.B., then a minor, voluntarily participated in an after-school program offered by an entity known as the Family Advocacy Center in Adair County, Missouri. S.H., also a minor, participated in the Center's after-school program, too. According to K.B., the Center is a joint project of the Adair County Juvenile Office, the Missouri Department of Mental Health, and others.

In February 2003, S.H. told Beatrice Dovin, a manager at the Center, that he was going to sexually assault K.B. Dovin called the child abuse hotline maintained by the Children's Division of the Missouri Department of Social Services. S.H.'s threat was subsequently communicated by Dovin or another person to Mike Waddle, Chief Juvenile Officer of the Second Judicial Circuit, Jeff Hall, Deputy Juvenile Officer of the Second Judicial Circuit, Stephanie Howerton, a supervisor at the Children's Division of the Adair County, Missouri Department of Social Services, and Sara Holzmeier, a school resource officer for the Kirksville Police Department and the Kirksville R-III School District. These four did not report S.H.'s threat to K.B.'s parent.

Several months later, during the summer of 2003, S.H. sexually assaulted K.B. at a public swimming pool. K.B. and S.H. were not under the Center's supervision at the time of the assault. K.B. alleges, however, that if her parent had been warned

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

of S.H.'s threat, then the parent would have been in a position to take protective action.

K.B. sued Waddle, Hall, Howerton, and Holzmeier, whom we will describe as "the officials," in Missouri state court, and the officials removed the case to the federal district court. K.B.'s petition alleged that the officials, as state actors, created a danger to K.B. and made K.B. more vulnerable to harm by failing to warn her parent of the threat. K.B. claimed that the officials thereby violated a liberty interest in personal bodily integrity that she enjoys under the Fourteenth Amendment. K.B. also asserted state-law claims of negligence and negligent infliction of emotional distress, based on the officials' "duty . . . to K.B., to take steps to report and prevent abuse and threatened abuse."[2]

Waddle, Hall, and Howerton moved for judgment on the pleadings and for summary judgment. They raised a defense of qualified immunity to K.B.'s due process claim and a defense of official immunity under Missouri law to her state-law negligence claims. Holzmeier separately moved for judgment on the pleadings, asserting that K.B. failed to allege the violation of a constitutional right and that she was entitled to official immunity.

The district court ruled that K.B. failed to establish a due process violation, so the officials were entitled to qualified immunity and judgment as a matter of law on the federal claim. With respect to K.B.'s negligence claims, the court concluded that the officials enjoyed official immunity under state law because their duty to act, if any, was discretionary, not ministerial.

---

[2]In her complaint, K.B. also pleaded that Howerton instructed another employee not to inform K.B.'s parent of the threat, but K.B. did not rely on that allegation in her opposition to the officials' motions for judgment on the pleadings and summary judgment, or in her briefing on this appeal.

K.B. appeals those rulings. We review the district court's grant of judgment on the pleadings and summary judgment *de novo*, viewing the record in the light most favorable to K.B., the nonmoving party. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (judgment on the pleadings); *Butts v. Cont'l Cas. Co.*, 357 F.3d 835, 837 (8th Cir. 2004) (summary judgment). Judgment on the pleadings and summary judgment are warranted where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 12(c), 56(a); *Ashley Cnty.*, 552 F.3d at 665.

## II.

### A.

The facts alleged, construed most favorably to K.B., do not establish a violation of the Due Process Clause, so the officials are entitled to judgment on the federal claim. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A State's failure to protect an individual against private violence generally does not violate the Constitution, because the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). There are two exceptions to that general rule. First, if a person is in the state's custody against her will, the state owes her a protective duty. *Id.* at 199-200. Second, "the state owes a duty to protect individuals if it created the danger." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005); *see also DeShaney*, 489 U.S. at 201. Neither exception applies here.

The officials did not restrain K.B.'s liberty through "incarceration, institutionalization, or other similar restraint," *DeShaney*, 489 U.S. at 200, so the custodial exception does not apply. *See Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1029-32 (8th Cir. 2007); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir.

-4-

1993). In *Lee*, we held that a student who voluntarily participated in a school band trip was not in state custody, and that the State therefore did not have a constitutional duty to protect the student. 472 F.3d at 1029-32. Likewise, K.B. was not in state custody when she voluntarily participated in the Center's after-school program. There is no evidence that K.B. or S.H. were even under the supervision of any of the officials or their agencies at the time of the assault at the public pool.

In failing to warn K.B.'s parent, the officials did not take an affirmative action that increased K.B.'s danger, so the second *DeShaney* exception is also inapplicable. Liability may attach where an individual "would not have been in harm's way but for the government's affirmative actions." *Carlton v. Cleburne Cnty., Ark.*, 93 F.3d 505, 508-09 (8th Cir. 1996). But the officials here did not affirmatively create the threat posed by S.H. As in *DeShaney*, "[t]he most that can be said of the [officials] in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." 489 U.S. at 203.

K.B.'s emphasis on *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), is misplaced. In *Kallstrom*, the Sixth Circuit held that a city placed undercover officers and their family members in danger because the city released the officers' addresses, phone numbers, and driver's licenses, and thereby "substantially increas[ed] the likelihood that a private actor would deprive [the officers and their families] of their liberty interest in personal security." *Id.* at 1067. Here, by contrast, the officials did not take any "affirmative action which increase[d] [K.B.'s] danger of, or vulnerability to, . . . violence beyond the level it would have been at absent state action." *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir. 1990). The state-created-danger exception thus does not apply, and the district court properly granted judgment on the pleadings and summary judgment for the officials on the federal constitutional claim.

B.

The officials are entitled to official immunity as to K.B.'s state-law negligence claims. Under Missouri law, official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). Public employees, however, are not entitled to immunity for torts committed when they are acting in a ministerial capacity. *Id.*

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required. A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* (internal citation omitted). By contrast, a ministerial function "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (internal quotation omitted); *see also Hutson v. Walker*, 688 F.3d 477, 485 (8th Cir. 2012). "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers*, 263 S.W.3d at 610; *accord Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 729-30 (Mo. Ct. App. 2011).

According to K.B., Missouri's child abuse–reporting statute, Mo. Rev. Stat. § 210.115, imposed on the officials a ministerial duty to report S.H.'s threat of abuse. The officials' duty under that statute, however, was discretionary, not ministerial. Section 210.115.1 provides: "When any . . . person with responsibility for the care of children has reasonable cause to suspect that a child has been or may be subjected to abuse . . . , that person shall immediately report to the division . . . ."

-6-

K.B. emphasizes that the statute mandates that the officials "shall immediately report" abuse. But to trigger the reporting requirement, there must be "reasonable cause" to suspect abuse, and that "reasonable cause" determination "requires an exercise of discretion and personal judgment, which takes the matter out of the realm of a ministerial act." *Larson v. Miller*, 76 F.3d 1446, 1457 (8th Cir. 1996) (en banc) (discussing analogous Nebraska statute).

K.B. argues that there was "reasonable cause" here as a matter of law, so the act of reporting would have been ministerial. But we implicitly rejected a comparable argument in *Larson*, *see id*. at 1459 (F. Gibson, J., dissenting), and we see no reason to construe Missouri law differently. "[T]he conditions of the statute describing when child abuse reporting is required are not so specifically designated and devoid of personal judgment as to render this a ministerial act." *Id*. at 1457 (majority opinion). That an official might exercise poor judgment in a given case does not remove the conduct from the category of discretionary acts.

According to K.B., Missouri common law separately establishes that the officials had a mandatory duty to warn K.B.'s parent, and that official immunity based on a discretionary duty is thus unavailable. K.B. relies on *Bradley v. Ray*, 904 S.W.2d 302 (Mo. Ct. App. 1995), which concluded that

> when a psychologist or other health care professional knows or pursuant to the standards of his profession should have known that a patient presents a serious danger of future violence to a readily identifiable victim the psychologist has a duty under Missouri common law to warn the intended victim or communicate the existence of such danger to those likely to warn the victim including notifying appropriate enforcement authorities.

*Id.* at 312.

*Bradley* recognized a common law duty for certain health care professionals, but did not involve the separate question of official immunity from liability. "[O]fficial immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence." *Southers*, 263 S.W.3d at 611. Any duty of the officials under the circumstances here was the sort of duty characterized as discretionary under Missouri law, because it required an exercise of discretion and personal judgment. Therefore, even if the duty discussed in *Bradley* were extended from health care professionals to the officials of the type who are defendants here, the doctrine of official immunity in Missouri forecloses liability.

The district court properly granted judgment on the pleadings and summary judgment for the officials as to K.B.'s negligence claims, because the officials are entitled to official immunity under Missouri law.

\* \* \*

The judgment of the district court is affirmed.

_____