# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3638

_____

| | | |
|---|---|---|
| John McKeehan, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Cigna Life Insurance Company; Life | * | |
| Insurance Company of North America, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  April 18, 2003

Filed:  September 19, 2003

_____

Before LOKEN, Chief Judge, HANSEN and RILEY, Circuit Judges.

_____

LOKEN, Chief Judge.

John McKeehan commenced this action seeking judicial review of the decision by Life Insurance Company of North America (LINA) to discontinue long-term disability benefits under his employer's disability Plan. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1416. LINA as claims administrator concluded that McKeehan, though unable to perform his former occupation, is not disabled from all work, a determination that terminated his disability benefits under the Plan. The district court affirmed LINA's denial of benefits under the deferential abuse-of-

discretion standard of review. McKeehan appeals, arguing that the court should have reviewed LINA's determination de novo, and, alternatively, that the claims record establishes that he is entitled to further benefits under the deferential standard. We agree that the de novo standard of review applies and remand to the district court for review of the benefits denial under that standard.

McKeehan applied for long term disability benefits in November 1996, after taking medical leave for a herniated disc. The Plan provides that an employee is eligible for up to twenty-four months of benefits if he is "unable to perform with reasonable continuity the material duties of [his] occupation." But benefits are discontinued after twenty-four months unless the plan administrator determines that the employee is disabled from all occupations, that is, "unable to perform with reasonable continuity the material duties of any gainful occupation for which [he is] reasonably fitted by education, training, and experience."

When McKeehan filed his claim, Standard Insurance Company was the claims administrator, acting on behalf of the plan sponsor. After obtaining McKeehan's medical records and an assessment from his physician, Standard Insurance advised McKeehan that his claim for long-term benefits had been approved. One year later, consistent with the Plan, Standard Insurance notified McKeehan that his benefits would be discontinued in February 1999 absent a determination that he was disabled from all occupations. Standard Insurance then commissioned a physician consultant to review McKeehan's medical records. The physician opined that McKeehan could perform sedentary work with sitting restrictions but recommended that Standard Insurance obtain an independent evaluation by an orthopedic surgeon.

LINA replaced Standard Insurance as claims administrator on December 1, 1998. LINA obtained a Physical Ability Assessment from McKeehan's treating physician, a Transferrable Skills Analysis identifying five suitable occupations McKeehan could perform, and a Labor Market Survey reporting openings for at least

some of these positions within a sixty mile radius of McKeehan's home. Based upon this record, LINA determined that McKeehan was not "disabled from all occupations" within the meaning of the Plan and discontinued benefits effective May 12, 1999. McKeehan twice asked LINA to review this adverse decision. In support of his second appeal, he submitted additional medical evidence and an evaluation by a vocational specialist opining that, based upon McKeehan's subjective complaints of pain, he "has been effectively eliminated from the competitive labor force." In December 2000, LINA rejected the second appeal and advised McKeehan that his remedies under the Plan were now exhausted. See generally Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770-71 (8th Cir. 2001). McKeehan then commenced this lawsuit challenging the denial of Plan benefits. See 29 U.S.C. § 1132(a)(1)(B).

In reviewing the denial of ERISA benefits, the reviewing court applies a deferential abuse-of-discretion standard if the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In all other cases, the plan administrator's decision is reviewed de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). McKeehan argues that the district court erred in applying the deferential abuse-of-discretion standard to LINA's denial of benefits. Whether an ERISA plan confers discretionary authority is a question we review de novo. See Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir. 2001).

In this case, the November 1, 1990 Plan declared that the Plan sponsor "is solely responsible for payment of [Long-Term Disability] Benefits payable under the terms of this Plan." The Plan further granted the sponsor "full and exclusive authority to control and manage the Plan, to administer claims, and to interpret the Plan and resolve all questions arising in the administration, interpretation, and application of the plan." This was an express grant of discretion that triggered the deferential abuse-of-discretion standard of review for benefit decisions by the Plan sponsor. See Walke, 256 F.3d at 839.

The Plan also provided that the sponsor "may contract with an independent third party to administer the Plan and process claims under the Plan." At the time McKeehan submitted his initial claim for benefits, the sponsor had retained Standard Insurance to perform this claims processing function. Standard Insurance obviously viewed its function as limited in nature, because McKeehan's benefits application was submitted on a Standard Insurance form that included the bold-face notation: "Standard Insurance Company is acting only in an administrative capacity. The ultimate responsibility for payment or non-payment of claims is with [the Plan sponsor]." These Plan provisions and the Standard Insurance form suggest that Standard Insurance was a third party hired to perform ministerial claims processing functions, not a plan administrator wielding discretionary authority. See Pacificare, Inc. v. Martin, 34 F.3d 834, 837-38 (9th Cir. 1994); 29 C.F.R. § 2509.75-8 at D-2. Thus, if Standard Insurance had remained in charge of claims processing, the Plan sponsor would have made the decision to deny McKeehan continuing benefits, and that decision would have been entitled to deferential review under the Plan, as in Black & Decker Disability Plan v. Nord, 123 S. Ct. 1965, 1967-68 (2003).

However, while McKeehan's claim was under review, important changes occurred. His employer underwent a change of ownership, and the new owner replaced Standard Insurance with LINA. The Plan remained the same. But LINA's answer to McKeehan's complaint admitted that LINA acted as "the Insurer of the Plan" and alleged that it was "*LINA*'s decision to terminate long-term disability benefits" (emphasis added). Thus, the pleadings conclusively establish that LINA's function in the processing of claims under the Plan was materially different than the function previously performed by Standard Insurance.

We agree with LINA that an ERISA plan may authorize the plan sponsor to delegate the sponsor's discretionary authority to determine eligibility for benefits or to construe the terms of the plan. See 29 U.S.C. § 1105(c)(1); 29 C.F.R. § 2509.75-8, at FR-12; Clapp v. Citibank, N.A. Disability Plan, 262 F.3d 820, 826-27 (8th Cir.

-4-

2001); Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1283-85 (9th Cir. 1990), cert. denied, 498 U.S. 1087 (1991). But here, even assuming that the Plan contained such authority, the record does not include the agreement between LINA and the current Plan sponsor. LINA admits it is the insurer of the Plan. As we have repeatedly noted, insurers are accustomed to de novo judicial review of their decisions, and therefore we do not infer discretionary authority when an employer or plan sponsor has funded its obligations under an ERISA plan by purchasing a standard-form group insurance policy. Rather, we require "explicit discretion-granting language" in the policy or in other plan documents to trigger the ERISA deferential standard of review. See Walke, 256 F.3d at 839, quoting Bounds v. Bell Atl. Enter. F.L.T.D. Plan, 32 F.3d 337, 339 (8th Cir. 1994). In this case, the Plan confers discretion on the Plan sponsor. LINA's claims processing predecessor lacked such discretion, and LINA failed to present evidence that its contractual agreement with the current Plan sponsor included the grant of such discretion. In these circumstances, the district court erred in conducting abuse-of-discretion review.

In Bounds, 32 F.3d at 339-40, after concluding the district court should have conducted de novo review, we affirmed the denial of long-term disability benefits because the issue was not raised in the district court, and the court did not commit plain error in applying the wrong standard of review. Here, McKeehan raised the issue in the district court, and the record assembled by LINA includes conflicting medical opinions and evidence. When the de novo standard of review applies, a district court has more discretion to allow the parties to introduce evidence in addition to that submitted to the plan decision-maker. See Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993). In addition, in conducting de novo review, the district court may wish to make findings of fact after a bench trial or on a stipulated fact record, rather than conducting the summary judgment review that is customary when applying the abuse-of-discretion standard. See Jebian v. Hewlett Packard Co., 310 F.3d 1173, 1182 & n.10 (9th Cir. 2002). For these reasons, we

conclude that de novo review should be conducted in the first instance by the district court. Accord Petrilli v. Drechsel, 910 F.2d 1441, 1447-48 (7th Cir. 1990).

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____