Inetha WHITE, Plaintiff,

v.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Defendant.

No. 4:03–CV–40386.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 7, 2005.

Patricia Wengert, Des Mines, IA, for Plaintiff.

Kimberly J. Walker, Ross W. Johnson, Faegre & Benson, Des Moines, IA, for Defendant.

### ORDER ON DEFENDANT'S MOTIONS TO LIMIT SCOPE OF THE RECORD, TO STRIKE, AND FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter is before the Court on Defendant's Motion for Order to Grant Defendant's Motion to Limit the Scope of the Record (Clerk's No. 16), Defendant's Second Motion to Strike (Clerk's No. 52), and Defendant's Motion for Summary Judgment (Clerk's No. 27). Attorney for the Plaintiff is Patricia K. Wengert; attorneys for the Defendant are Ross Johnson, Paul Del Aguila,[1] Daniel J. McMahon, and Jason Kuzniar. The Court finds oral argument, while requested, is not necessary based on the nature of the action and the nature of the review which must be under-

---

1. Paul Del Aguila has since withdrawn as an attorney in this matter.

taken by the Court. Accordingly, the Court considers the matter fully submitted and ready for ruling.

## PROCEDURAL HISTORY

Plaintiff, Inetha White ("White"), commenced this action against Defendant, The Prudential Insurance Company of America ("Prudential"), in the Iowa District Court for Polk County on June 19, 2003, which Defendant then removed to this Court on July 11, 2003. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, as this case arises under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

On June 14, 2004, Prudential filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. White resisted Defendant's motion on July 29, 2004. In addition to the summary judgment motion, the Court must determine the scope of the record to be reviewed and whether some of Plaintiff's filings should be stricken as improper.

## BACKGROUND FACTS

This matter concerns Prudential's decision to terminate long-term disability ("LTD") benefits to Inetha White under an employee welfare benefit plan ("the Plan") which is subject to ERISA. Prudential issued the Group Insurance Contract # GO–79365 ("the Policy") to Centrobe, Inc. ("Centrobe"), formerly Neodata Services, Inc., that funded the ERISA benefits at issue.

On May 31, 1998, White applied for disability benefits. In her application, White represented to Prudential that she was unable to perform the necessary duties of her position as a Material Handler as of January 27, 1998, because of a tumor. Under the Policy, an individual must be unable to perform the material and substantial duties of her occupation to meet the definition of "total disability" and be eligible for LTD benefits. Under the Policy, the definition of "total disability" changes at the end of the initial 24–month period that disability benefits are awarded. After the initial duration period, an individual must not be able to perform the material and substantial duties of *any* job for which she was reasonably fitted by her education, training, or experience in order to qualify for LTD benefits.

After reviewing White's medical records, Prudential determined that White was eligible to receive disability benefits for the initial 24–month period. Prudential further determined, however, that White's medical records did not indicate she was qualified for LTD benefits beyond that period. Specifically, Prudential found that White failed to provide any evidence that she was unable to perform the job functions for any occupation for which she was reasonably suited. In addition, Prudential determined, pursuant to the Policy's Benefit Limitation section, that White was no longer qualified to receive LTD benefits at the end of the 24–month period because her initial disability was caused, at least in part, by depression. Accordingly, Prudential terminated White's disability benefits at the end of the 24–month period because it determined White (1) no longer met the Policy's definition of "total disability" after the initial duration period and (2) had exhausted her LTD benefits.

White appealed the decision to terminate her LTD benefits. In so doing, White submitted additional information for Prudential's review. After reviewing the new and existing material, Prudential denied White's appeals.

## ANALYSIS

Pending before the Court is Defendant's Motion for Summary Judgement. Prior to considering this motion, the Court must determine the scope of the record for re-

view, as there is some disagreement on this issue. In addition, the Court must assess whether certain filings made by Plaintiff should be stricken. Finally, the Court will then analyze the parties' contentions related to the motion for summary judgment.

## A. Scope of the Record

The parties agree that all of the documents produced by Defendant (PIC0001 to PIC0829) are to be considered by the Court in connection with its review of the propriety of Defendant's decision with respect to Plaintiff's claim. There is, however, disagreement as to whether additional documentation should be considered by the Court. Specifically, Plaintiff asserts the Court should consider the medical records of Iowa Lutheran Hospital (Pl.Doc. Nos. 619–678), and workers' compensation medical records (Pl.Doc. Nos.818–1172).

Prudential objects to the introduction and review of these additional documents because they were not considered by Defendant in connection with making its decision with respect to Plaintiff's claim. According to Prudential, these documents were not submitted to Prudential by Plaintiff, and these documents are not part of Defendant's claim file.

In conducting a review of the reasonableness of a benefits decision under the abuse of discretion standard, the Court normally is confined to a review of the information before the administrator at the time of the claim decision. *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir.2002); *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir.2000); *Farley v. Ark. Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998); *Layes v. Mead Corp.*, 132 F.3d 1246, 1251 (8th Cir.1998); *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997). This limitation is imposed to " 'ensure expeditious judicial re-

view of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.' " *Cash*, 107 F.3d at 641–42 (quoting *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993)).

Likewise, under a *de novo* review, while the Court "has more discretion to allow the parties to introduce evidence in addition to that submitted to the plan decisionmaker," *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 793 (9th Cir.2003), it should not normally consider new evidence that could have been offered to the plan administrator. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir.1999); *see also Cash*, 107 F.3d at 641 (noting that even under a *de novo* review courts, are "discouraged" from admitting additional evidence) (citations omitted); *Donatelli*, 992 F.2d at 765 ("If it is necessary for adequate de novo review of the fiduciary's decision, the district court may allow the parties to introduce evidence in addition to that presented to the fiduciary. . . . However, to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators, the district court should not exercise this discretion absent good cause to do so.") (citations omitted).

The Court may admit additional evidence in a review of denial of benefits under ERISA if the Plaintiff shows good cause for the Court to do so. *Brown v. Seitz Foods, Inc., Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir.1998); *see also Ferrari*, 278 F.3d at 807. If Plaintiff is unable to show "good cause," the Court should refuse to consider any evidence that was not before the plan administrator. *Brown*, 140 F.3d at 1201. Moreover, if the disputed materials are neither particularly helpful nor persuasive, then there has not been a breach of fiduciary duty and the materials need not be entered into the administrative record. *Phillips–Foster v.*

*UNUM Life Ins. Co. of America,* 302 F.3d 785, 798 (8th Cir.2002).

Prudential asserts that White has failed to come forward with any explanation as to why this Court should consider evidence beyond that which was considered by the Plan administrator. Defendant contends that White had a full and fair opportunity to submit all evidence in support of her claim to Prudential and that she has failed to explain why she failed to submit the contested documents to Defendant. Accordingly, Prudential asserts that White has not shown good cause for consideration of the documents in question and moves to exclude those documents and limit the scope of the record to the documents in the administrative claim file.

█ The Court finds it is compelled to limit the record to the materials contained in Prudential's claim file for White. This was the material Prudential relied on in making its benefits determination, which is the subject of this Court's review. White had ample opportunity to present additional evidence over a series of multiple reviews/appeals spanning nearly five years, and in fact did submit some additional material. The Court is now constrained from admitting even more material because White has not provided good cause for so doing. As a result, the Court must grant Defendant's motion to limit the scope of the record; and the Court will only consider the material contained in Prudential's claim file for White.

## B. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedures provides that summary judgment should be rendered,

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). To avoid summary judgment, the nonmoving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *See Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. While the quantum of proof that must be produced to avoid summary judgment is not precisely measurable, it must be enough evidence for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the Court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir. 1996). The question before this Court is whether the record, when viewed in a light most favorable to the nonmoving party, shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995) (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548, and *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505). In addition, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is partic-

ularly appropriate," *id.,* as is the case in many ERISA benefits cases. *See Davidson v. Wal–Mart Assocs. Health & Welfare Plan,* 305 F.Supp.2d 1059, 1068 (S.D.Iowa 2004); *Ballinger v. Eaton Corp.,* 212 F.Supp.2d 1086, 1091 (S.D.Iowa 2002).

## C. Defendant's Motion to Strike

Prudential has filed a motion to strike Plaintiff's revised statement of facts and resistance to Defendant's motion for summary judgment. Prudential contends that White has failed to comply with the federal and local rules of civil procedure, and consequently the offending filings should be stricken and not considered by the Court in ruling on the pending motion for summary judgment. Plaintiff has not resisted this motion in any filing before the Court.

■ The Local Rules for the United States District Court for the Southern District of Iowa governing motions for summary judgment contain clear requirements governing the filing of statements of fact and the responses to those filings. Local Rule 56.1 provides the following:

**(b) Resisting Party's Papers.** A party resisting a motion for summary judgment must, within 21 days after service of the motion, serve and file contemporaneously all of the following:

1. A brief that complies with the requirements of LR 7.1(e) in which the resisting party responds to each of the grounds asserted in the motion for summary judgment;

2. A response to the statement of material facts, filed separately, in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact;

3. A statement, filed separately, of additional material facts that the resisting party contends preclude summary judgment; and

4. An appendix, filed separately, that complies with the requirements of section (e) of this rule.

Local Rule 56.1(b); *see also Karras v. Karras,* 846 F.Supp. 804, 808 n. 5 (D.S.D. 1993) ("A party opposing the motion is required to submit a statement of material facts which they contend are in dispute and they are also required to respond to the moving party's statement."). In addition, this Rule provides that

[a] response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statements, with citations to appendix containing that part of the record.

Local Rule 56.1(b). "The failure to respond with appropriate citations ... constitutes an admission of that fact." Local Rule 56.1(b); *see also Thomson v. Gummiwerk Kraiburg Elastik, Beteiligungs GmbH & Co.,* 2003 WL 22697174, 2003 U.S. Dist. LEXIS 20414 (N.D.Iowa Nov. 13, 2003) (finding all facts admitted due to plaintiff's failure to respond to or contest facts set forth by defendants in accordance with Local Rule 56.1(b)); *Northwest Bank & Trust Co. v. First Illinois Nat'l Bank,* 221 F.Supp.2d 1000, 1004–05 (S.D.Iowa 2002), *aff'd,* 354 F.3d 721 (8th Cir.2003) (finding plaintiff's failure to cite to specific record facts contained in its appendix led to admission of defendant's facts).

A brief overview of Plaintiff's responses to the pending motion for summary judgment illustrates the difficulty Plaintiff's counsel has encountered in attempting to comply with the rules. Prudential filed its motion for summary judgment on June 14, 2004. Even though granted an extension,

Plaintiff filed her resistance late. The statement of facts filed by Plaintiff failed to conform to the express requirements of the local and federal rules, and Defendant moved to strike. Specifically, Plaintiff seemingly ignored the requirements of Local Rule 56.1(b) by failing to expressly admit, deny, or qualify Defendant's numbered statement of facts. At a hearing on Prudential's motion to strike, Plaintiff provided the Court with a revised statement of facts which still did not comply with the local and federal rules.

At this hearing, however, Defendant agreed to withdraw its motion with the understanding that Plaintiff would submit a second revised statement of facts in conformance with the Local Rules. Pursuant to the Court's order, and after being provided some guidance by the Court, Plaintiff filed her revised statement of facts in resistance on October 1, 2004.

Defendant contends that this revised filing still fails to meet the requirements of the Local Rules. Specifically, while Plaintiff has expressly admitted, denied, or qualified Prudential's facts, she has failed to cite to specific portions of the administrative record as required to support her denials and qualifications. As such, Prudential requests that all unsupported deni-

als[2] and qualifications[3] be deemed admitted. See Local Rule 56.1(b). In addition, Prudential requests that any additional statements of fact made by Plaintiff be stricken because she failed to file her own separate revised statement of material facts.[4] See Karras, 846 F.Supp. at 808 (finding that plaintiffs' failure to properly respond to defendant's statement of facts and failure to submit their own statement of facts required that defendant's statement of facts be deemed admitted). Finally, Prudential also asserts that Plaintiff's responses be stricken to the extent that they are simply argumentative rather than responsive.[5] See Northwest Bank & Trust Co., 221 F.Supp.2d at 1003–04 (ordering that plaintiff be deemed to have admitted all of defendant's statement of material facts as a sanction for filing a response that was replete with conclusory allegations and legal arguments).

The Court will grant the motion to strike as Plaintiff's counsel again failed to fully comply with the local rules.[6] Her repeated failures have drawn out this matter, causing Defendant and the Court to expend additional time and resources to deal with her faulty filings. The Local Rules were promulgated to increase judicial efficiency to the benefit of the Court

2. See Plaintiff's Revised Statement of Facts in Resistance ¶¶ 61, 63, 71, 79, 81, 92, 105.

3. See Plaintiff's Revised Statement of Facts in Resistance ¶¶ 15, 22, 32, 34, 38, 40, 44, 51, 55, 64, 66, 68, 69, 73, 104.

4. Contemporaneous with filing her revised response to Defendant's statement of facts, Plaintiff also filed another brief regarding standard of review and limitation of the record and resistance to Defendant's motion for summary judgment ("Revised Brief in Resistance"). Although no substantive changes were made in the Revised Brief in Resistance, Defendant notes that Plaintiff revised certain sections by rewriting sentences or citing additional facts in addition to citing to various portions of the administrative record. However, Plaintiff has failed to submit a statement

of additional facts that she contends precludes summary judgment in violation of Local Rule 56.1(b)(3). As a result, Prudential requests that any additional facts set forth in White's Revised Brief in Resistance, including citations to the administrative record, be stricken.

5. See Plaintiff's Revised Statement of Facts in Resistance ¶¶ 22, 23, 27, 29, 30, 34, 38, 39, 40, 55, 66, 68, 71, 74, 78, 84, 85, 95, 96, 97, 101, 102, 106.

6. The Court does note, however, that the ruling on this motion does not materially affect the ruling on the motion for summary judgment.

and the litigants, and Plaintiff's chronic failure to comply warrants imposing the appropriate sanction as provided in the rules. The Court finds the motion to strike provides an appropriate consequence to Plaintiff's failure to meet the requirements of the Local Rules.

### D. Defendant's Motion for Summary Judgment

The Defendant has brought its motion for summary judgment arguing that the decision of the Committee is entitled to deferential review and that under such review, the decision was reasonable and must be upheld. Defendant contends it is entitled to judgment as a matter of law because Prudential's decision to terminate Plaintiff's LTD benefits was not arbitrary or capricious, and that summary judgment is therefore appropriate. Moreover, Prudential asserts that it is entitled to summary judgment even under a *de novo* review because the facts indisputably demonstrate that White did not qualify for LTD benefits after the initial 24–month period. White resists Defendant's motion.

### 1. Standard of Review

ERISA provides plan beneficiaries with a right to judicial review of a benefits determination. 29 U.S.C. § 1132(a); *Heaser v. Toro Co.*, 247 F.3d 826, 833 (8th Cir.2001). An ERISA plan may authorize a plan sponsor to delegate to the plan administrator discretionary authority to both determine eligibility for plan benefits and to construe plan terms. *McKeehan*, 344 F.3d at 793 (citing 29 U.S.C. § 1105(c)(1), and 29 C.F.R. § 2509.75–8). For such authority to be granted, the plan must contain explicit language granting discretionary authority to the plan administrator. *Id.* However, "[t]he plan need not spell out in intricate detail who has the discretion other than to specify that those charged with implementing it will have

such discretion." *Butts v. Continental Cas. Co.*, 357 F.3d 835, 828 (8th Cir.2004); *see, e.g., Shipley v. Ark. Blue Cross & Blue Shield*, 333 F.3d 898, 901 n. 4 (8th Cir. 2003) (holding plan language sufficient to invest plan administrator with discretionary authority such that court should apply abuse of discretion standard upon review).

■ If the plan gives "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision to deny benefits is reviewed by the court under an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Cash*, 107 F.3d at 641 ("If the plan gives such discretionary authority, the court reviews the plan administrator's decision for abuse of discretion"); *Stock v. SHARE*, 18 F.3d 1419, 1422 (8th Cir.1994) ("If a plan grants such authority, courts review the denial of benefits under an arbitrary-and-capricious standard."); *Shaw v. The McFarland Clinic*, 231 F.Supp.2d 924, 936–37 (S.D.Iowa 2002) (same). Otherwise, a *de novo* standard is to be employed. *Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948 ("Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). In applying this standard, the court must uphold the plan administrator's benefits determination or plan construction if it is reasonable. *Shipley*, 333 F.3d at 901.

■ In the present case, the Policy provides that "Total Disability exists when Prudential *determines* that all of the conditions are met." In addition, the Policy

provides that "[t]his section applies, if your Disability, *as determined* by Prudential, is caused at least in part by a mental, psychoneurotic or personality disorder." The Eighth Circuit has held similar language, specifically the word "determines", affords the plan administrator discretionary authority to determine benefit eligibility. *See Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 827 (8th Cir. 2001) (citing *Finley v. Special Agents Mut. Benefit Assoc. Inc.*, 957 F.2d 617, 620 (8th Cir.1992), and *Bounds v. Bell Atl. Enters. Flexible Long–Term Disability Plan*, 32 F.3d 337, 339 (8th Cir.1994)). Thus, under the terms of the Policy, the Court finds that the Plan gives Prudential discretionary authority to determine benefits and whether eligibility for benefits is limited to a certain duration of time. Accordingly, the abuse of discretion standard is applicable to any review of Prudential's decisions regarding the eligibility for disability benefits or the duration of eligibility for said benefits.

█ There are, however, occasions when the Court applies a different standard even though the plan grants discretionary authority to the administrator. *See, e.g., Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998). White asserts that Prudential's decision should be analyzed *de novo* [7] or under a sliding scale standard because she contends that Defendant breached its fiduciary duty, acted in bad faith, and that she was not afforded a full and fair review, in addition to other procedural irregularities. Indeed, where there are procedural irregularities or a conflict of interest, decisions are reviewed under a sliding scale standard of review. *Clapp*, 262 F.3d at 826, 827; *Woo*, 144 F.3d at 1160.

Under the *Woo* standard, the plaintiff must show that (1) a procedural irregularity existed which (2) " 'caused a serious breach of the plan administrator's duty to her.' " *Lawyer v. Hartford Life & Accident Ins. Co.*, 100 F.Supp.2d 1001, 1009 (W.D.Mo.2000) (quoting *Woo*, 144 F.3d at 1160); *see also Ferrari*, 278 F.3d at 806 (citing *Woo*, 144 F.3d at 1160, and finding that "[t]o obtain a less deferential standard, [the plaintiff] must present material and probative evidence (1) that [the defendant] had a palpable conflict of interest or committed serious procedural errors, which (2) caused a serious breach of the plan administrator's duty to him."). In addition, the plaintiff must "show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.' " *Woo*, 144 F.3d at 1161 (quoting *Buttram v. Cent. States, S.E. & S.W. Area Health & Welfare Fund*, 76 F.3d 896, 901 (8th Cir.1996)); *see also Phillips–Foster*, 302 F.3d at 795.

Thus, White must first show that a procedural irregularity exists and that said

---

7. One exception to the deferential review used when the plan administrator is granted decision-making discretion is when the fiduciary interprets the law. In such circumstances, the decisions are reviewed de novo. *Meyer v. Duluth Bldg. Trades Welfare Plan*, 299 F.3d 686, 689 (8th Cir.2002) (finding that "where a plan's decision to deny benefits is based on its construction of existing law, the plan's interpretation of a controlling principle of law is reviewed de novo"). White does not allege Prudential interpreted the law in making its benefits determination.

White does point to the decision in *Davidson v. Prudential Insurance Co. of America* as requiring de novo review for failure to develop the record. This, however, is a poor reading of this decision as the parties agreed a de novo review was required *because the plan did not provide discretionary authority. Davidson v. Prudential Ins. Co. of America*, 953 F.2d 1093, 1095 (8th Cir.1992). White points to no other exception that would warrant de novo review of Prudential's decision. Accordingly, a de novo review is not applicable to this case so long as Prudential is granted discretion under the Policy.

irregularity is related to the decision at issue. In discussing procedural irregularities, the Eighth Circuit has held that,

> where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where the procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process, a court may infer that the trustee did not exercise judgment when rendering the decision.

*Buttram*, 76 F.3d at 900. In other words, when procedural irregularities cause the decision to be a breach of the plan administrator's fiduciary obligations, a lower standard of review is warranted. *Id.* at 901.

ERISA provides guidance as to the fiduciary duties of for an ERISA plan administrator. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of participants and beneficiaries ... and for the exclusive purpose of ... providing benefits to the participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). The standard to be exercised is that of a prudent person. 29 U.S.C. § 1104(a)(1)(B). In addition, ERISA provides that these duties are to be exercised "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Finally, the plan administrator must give a full and fair review when making a plan determination. 29 U.S.C. § 1133(2); *see also* 29 C.F.R. § 2560.503–1(g).

Secondly, even assuming White could prove a procedural irregularity in the present case, she must also show that said irregularity caused a serious breach in the Plan's fiduciary duty to her. This prong "presents a considerable hurdle for plaintiffs" and requires that plaintiffs prove the

decision was a product of the plan administrator's "whim". *Phillips–Foster*, 302 F.3d at 795 (citations and quotations omitted); *Schatz*, 220 F.3d at 948.

White asserts that Prudential breached its fiduciary duty, acted in bad faith, and that the review was full of procedural irregularities and did not constitute a full and fair review. White first contends Prudential failed to develop the record at all. Specifically, White claims that Prudential failed to consult the appropriate experts and overlooked the medical records of Dr. Palakurthy. In addition, White contends there is no medical evidence in the record that her personality disorder prevented her from performing her job, and that Prudential was deficient in not consulting with a vocational rehabilitation specialist.

White also asserts that Prudential ignored submitted evidence that her condition had changed for the worse, specifically that contained in Dr. Palakurthy's medical reports. As to the independent review by an outside physician, White alleges Dr. Luros was a "doctor and internist for hire" that merely followed Prudential's lead while making several mistakes in his review of the record, thereby rendering his report and opinion "not credible". Finally, White contends she was denied the opportunity to submit her complete medical file. White asserts that these procedural irregularities are directly related to the decision to deny benefits, and therefore this Court should examine Prudential's determinations under a sliding scale standard.

Prudential argues that White's contentions can basically be summed up as one alleged procedural irregularity, that is, Prudential's reliance on the report and opinion of Dr. Luros. Dr. Luros, a Board Certified Internist and Gastroenterologist, conducted an independent review of Plaintiff's medical records to determine the extent, if any, of White's disability. Prudential states that Dr. Lu-

ros is neither employed by Prudential nor a "doctor or internist for hire". Prudential contends its decision to employ an internist to review the records was warranted as White discontinued working in 1998 due to continuing abdominal pain. Further, Prudential contends that White does not suffer from an uncommon disease necessitating review by a more specialized physician. Accordingly, Prudential contends that its failure to request a cardiologist or psychiatrist to review White's records and its reliance on Dr. Luros' opinion do not constitute procedural irregularities under the *Woo* standard. In addition, as discussed above, Prudential gave Plaintiff ample opportunity to submit additional medical records. Prudential asserts her failure to do so cannot now be used against Prudential to reopen the claim file or have the administrator's review be subject to a sliding scale review by this Court. Prudential contends the administrative record contains all of the medical records submitted by Plaintiff and her treating physicians and that all of White's medical records were examined by Prudential.

Finally, Prudential contends it did conduct a full and fair review of Plaintiff's claims for LTD benefits.[8] In a letter dated August 25, 1998, Prudential initially denied White's claim but invited her to submit additional information. White formally appealed Prudential's decision on December 21, 1998, and indicated further information would be submitted, though almost two years passed before any additional information was actually submitted. On March 27, 2001, Prudential notified White that it awarded her LTD benefits

for the initial duration period (July 26, 1998, through July 25, 2000), but that effective July 26, 2000, her LTD benefits were terminated as she no longer met the definition of disability. White was again invited to provide additional information to support her claim.

On April 14, 2001, Plaintiff's counsel appealed Prudential's decision to terminate benefits following the initial duration period. Prudential reviewed the medical documentation in the file and upheld its original decision on July 13, 2001. White was informed of her right to a second appeal, to which she availed herself on September 10, 2001. Again, Prudential upheld its original determination and so advised Plaintiff. Plaintiff's counsel requested Prudential again reconsider in a letter dated October 1, 2001, and White submitted additional medical information in support of her claim on May 6, 2002, over seven months later.

Prudential requested additional records documenting the basis of White's appeal and her medical condition as of July 2000 from Plaintiff's treating physicians during a telephone conversation with Plaintiff's counsel on July 18, 2002. This documentation was never received by Prudential, despite several requests, until Plaintiff submitted a one-page report/letter from Dr. Palakurthy dated January 23, 2003.[9] Prudential again reviewed White's entire medical file, including the letter from Dr. Palakurthy, and on March 26, 2003, informed White that it was upholding its original decision to deny her claim for LTD benefits. As Prudential points out, Plaintiff's claim was evaluated multiple times over a five-year period, including three times at

---

8. Prudential notes that nowhere in Plaintiff's complaint does she allege Prudential breached its fiduciary duty by failing to conduct a full and fair review of her benefits claim. Prudential argues that Plaintiff is now attempting to amend her complaint in her brief

and this should be duly rejected as impermissible.

9. This letter is included in the administrative claims file.

Plaintiff's request, and this clearly satisfied ERISA's full and fair review requirement. *See Davidson,* 953 F.2d at 1096 (holding that defendant's attention to plaintiff's claim, as evidenced by defendant's review of the claim three times, satisfied the full and fair review requirement of ERISA).

The Plan grants Prudential discretionary authority to interpret and apply the terms of the Plan in connection with determining eligibility and entitlement to Plan benefits. Thus, as long as there does not exist a conflict of interest or procedural irregularity that caused a serious breach of the Plan's fiduciary duty to White, then the abuse of discretion standard will apply.

▮ The Court finds that much of Plaintiff's argument requesting a sliding scale standard of review is misplaced. White's contentions may indeed be relevant to the reasonableness of Prudential's decision, i.e., whether its decision was arbitrary and capricious, however, they are in large part irrelevant to determining which standard of review applies. The Court also finds no procedural irregularity sufficient to qualify for review under the *Woo* sliding scale standard. Much of the difficulty with the administrative record and internal appeals seems to come from Plaintiff's own delays and failures in submitting additional records as requested. Prudential repeatedly reviewed its decision, gave Plaintiff ample opportunity to submit additional information, employed an independent physician to review the file, and provided Plaintiff with a written decision detailing the reasons for the denial of her claims. Accordingly, the Court will apply the abuse of discretion standard in reviewing the benefits decisions made by Prudential.

## 2. Abuse of Discretion

Defendant argues that, under the abuse of discretion standard, the decision Prudential made to deny White LTD benefits

after the initial 24 month-period was reasonable. Prudential further contends that the decision is supported by substantial evidence. Meanwhile, White argues that even under a deferential review, Prudential's decision to discontinue LTD benefits after 24 months is unreasonable.

▮ Under the abuse of discretion standard, the Court must uphold the decision of the administrator as long as it is reasonable. *Shipley,* 333 F.3d at 901; *Farley,* 147 F.3d at 777. This standard reflects the Eighth Circuit's "general hesitancy" to interfere with the administration of an ERISA benefit plan. *Layes,* 132 F.3d at 1250; *see also Smith v. UNUM Life Ins. Co. of America,* 305 F.3d 789, 794 (8th Cir.2002) ("A court should be hesitant to interfere with the administration of an ERISA plan."). A claim determination is reasonable if the decision is one that a reasonable person could reach on the facts, regardless of other reasonable alternatives. *See Schatz,* 220 F.3d at 949; *Farley,* 147 F.3d at 777; *Cash,* 107 F.3d at 641.

▮ In conducting a deferential review, the Court is not to re-weigh the evidence and substitute its own view of the evidence for that of the plan administrator. *Ferrari,* 278 F.3d at 807; *Cash,* 107 F.3d at 641–42; *Bolling v. Eli Lilly & Co.,* 990 F.2d 1028, 1029 (8th Cir.1993); *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 573 (8th Cir.1992). In other words, the Court may not " 'reject a discretionary trustee decision with which the court simply disagrees.' " *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996) (quoting *Cox,* 965 F.2d at 572), abrogated on other grounds, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003) (abrogating *Donaho* by stating ERISA does not require that plan administrators accord special deference to the opinions of treating physicians); *see also Cash,* 107 F.3d at 641. "If

the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation may be made." *Cash,* 107 F.3d at 641 (citing *Donaho,* 74 F.3d at 899); *see also Phillips–Foster,* 302 F.3d at 794 ("The administrator's decision need not be the only sensible one, so long as the decision provides a reasonable explanation, based on the evidence, in support of a particular outcome."); *Solger v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan,* 144 F.3d 567, 568 (8th Cir.1998) (finding that under the abuse of discretion standard, a court "will sustain the administrator's interpretation if it is reasonable, even if it is not the only reasonable interpretation of the plan, and even if [the court] would have chosen a different interpretation had the initial decision been [the court's] to make"). Even more, for an interpretation to be an abuse of discretion it needs to be " 'extremely unreasonable.' " *Dahlin v. Metropolitan Life Ins. Co.,* 255 F.Supp.2d 987, 997 (N.D.Iowa 2003) (quoting *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994)).

In determining whether the plan administrator abused its discretion and made an arbitrary and capricious decision, the Court must "ask whether the decision to deny ... benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz,* 220 F.3d at 949 (citing *Donaho,* 74 F.3d at 898–901); *see also Ferrari,* 278 F.3d at 807; *Phillips–Foster,* 302 F.3d at 794. "A plan administrator's fact-based disability decision is reasonable if it is supported by 'substantial evidence.' " *Norris v. Citibank, N.A. Disability Plan,* 308 F.3d 880, 883–84 (8th Cir.2002) (citing

*Fletcher–Merrit v. NorAm Energy Corp.,* 250 F.3d 1174, 1179 (8th Cir.2001)). "In other words, was the [plan administrator's] factual determination based on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *LeStrange v. Fortis Benefit Ins. Co.,* 2003 WL 21372162, *11 (N.D.Iowa) (quoting *Donaho,* 74 F.3d at 900–01). Thus, an administrator's decision is to be considered reasonable "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Schatz,* 220 F.3d at 949 (quoting *Donaho,* 74 F.3d at 899).

██ In reviewing a benefits denial, the Court will look to the administrative record. Important to that record is the medical evidence contained therein. ERISA does not require a plan to defer to the opinion of the treating physician. *Black & Decker Disability Plan,* 123 S.Ct. at 1972. Furthermore, where there is a conflict in medical opinions, "the plan administrator does not abuse his discretion by adopting one opinion, if reasonable," over other opinions provided. *Smith,* 305 F.3d at 794. With this principle and the rules governing review of a benefits determination under ERISA in mind, the Court will determine whether there is substantial evidence to support Prudential's decision such that it could be considered reasonable.

**a. Denial of Continuing LTD Benefits at End of Initial Duration Period**

Prudential originally denied Plaintiff benefits. Following a review of White's file,[10] on March 27, 2001, Prudential grant-

---

**10.** This review was done at the behest of Plaintiff's counsel. Dr. Luros also reviewed Plaintiff's file during the initial determination, wherein he concluded White was disabled during the month of January 1998, and from March 5, 1998, through May 15, 1998. Dr.

Luros then concluded White had no internal problems that would preclude her from full, unrestricted performance of her duties as a Material Handler, a determination discarded upon further review.

ed White LTD benefits from July 26, 1998, through July 25, 2000. Prudential had Dr. Richard Luros, a Board Certified Internist and Gastroenterologist, conduct an independent medical review. He determined that White had the ability to lift up to 20 pounds frequently and 30 pounds occasionally but would need assistance lifting items over 50 pounds. With this restriction, Prudential determined that White could no longer perform the material and substantial duties of her occupation, i.e., a Material Handler, which required lifting of items weighing 50–75 pounds.

At the same time, Prudential determined that beginning July 26, 2000, White no longer qualified for LTD benefits. Pursuant to the Policy, the initial duration for LTD benefits is equal to the elimination period (180 days) plus 24 months. At the conclusion of the initial duration period, the definition of "total disability" in the Policy changes from inability to perform the duties of *"your* occupation" to inability to perform "the material and substantial duties of *any* occupation." Based on the medical evidence in Plaintiff's file, Prudential determined that White was not disabled for "any occupation" and therefore terminated her LTD benefits effective July 26, 2000, i.e., at the conclusion of the initial duration period.

Prudential's determinations were based on the medical records [11] submitted by White and her counsel, the independent review of Dr. Luros, and the Social Security Administration ("SSA") decision granting Plaintiff disability benefits. Dr. Luros noted Plaintiff had elevated blood pressure if she failed to take her medication, had been evaluated for chest pains, and that her major physical problem was a lumbosacral muscle spasm secondary to her weight and/or hypertension. Dr. Luros then determined that White should be able to lift up tp 20 pounds without difficulty

and occasionally up to 30 pounds, though he suggested she would need assistance to lift packages over 50 pounds. The SSA decision likewise found White capable of lifting up to 20 pounds occasionally and 10 pounds frequently. The SSA further found White able "to do simple, routine, repetitive work that would require only occasional contact with the public, co-workers and/or supervisors."

Based on these restrictions, and taking into account White's high school education, two years of college, and past experience as a Material Handler, Prudential determined that White was capable of performing the sedentary occupations of Mail Clerk and Cashier. Accordingly, Prudential determined White was able to perform the material and substantial duties of another occupation and was therefore not totally disabled beyond the initial duration period.

White contested Prudential's determinations on appeal, sending already submitted or duplicate records, along with a letter from Dr. Uma Palakurthy. Dr. Palakurthy's letter, dated January 23, 2003, stated White was unable to work from January 1998 through July 2000 and was unable to work at the present time. This letter noted White was followed in the clinic for multiple conditions, including bilateral carpal tunnel syndrome, hypertension, asthma, fibromyalgia, bursitis of the left shoulder, chronic back pain, hyperlidemia, and depression. However, no medical records were submitted to support this opinion.

Prudential claims it made numerous requests for additional medical documentation detailing Plaintiff's medical condition as of July 2000 but that Plaintiff never submitted the requested documentation. Accordingly, upon further review of Plaintiff's file, Prudential determined that Dr.

11. The medical records submitted by Plaintiff were devoid of any records post August 2000.

Palakurthy's opinion was subjective and not supported by any objective medical evidence. Instead, Prudential found the medical evidence in the record, Dr. Luros' independent review and opinion and the SSA decision, indicated Plaintiff did not suffer from any disabling medical condition. Consequently, Prudential upheld its decision to terminate White's LTD benefits.

White contends that competent medical evidence demonstrates she was disabled and unable to perform any job. She points specifically to the SSA decision and claims it clearly shows she was unable to perform sedentary and light duty jobs. White asserts Dr. Luros was not an appropriate expert and denounces the fact that Prudential did not consult a vocational expert on this issue. In addition, White argues that Prudential's failure to pay LTD benefits until April 2003 is fatal to Defendant's position, though the basis for this argument is never explained.

White also contends Prudential did not conduct a full and fair review of the "voluminous" medical records of her treating physicians, specifically, Drs. Palakurthy and Paul, though she wholly fails to cite to those records herself. Finally, White contends there is no record of affirmative action by Defendant in making its decisions. According to Plaintiff, after she appealed the decision to deny benefits, Prudential did not attempt to update their records, overlooked Dr. Palakurthy's records, and failed to obtain opinions from a cardiologist, vocational rehabilitation expert, and psychiatrist.

The Court finds Dr. Palakurthy's letter is not entitled to any special deference, see *Black & Decker Disability Plan*, 123 S.Ct. at 1972, and "[w]here there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has the discretion to find that the employee is not disabled unless 'the administrative decision lacks support in the record or ... the evidence in support of the decision does not ring true and is ... overwhelmed by contrary evidence.'" *Coker v. Met. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir.2002) (citations omitted). Prudential's determination is not overwhelmed by contrary evidence;[12] indeed, Plaintiff does little more than argue there is insufficient evidence to support Defendant's determinations. To the contrary, the evidence in the administrative record substantially supports the conclusion that White was not unable to perform the material and substantial duties of any occupation for which she was suited, and therefore she did not meet the Policy's definition of "total disability" after the 24–month initial duration period. Moreover, Plaintiff's arguments that Prudential failed to adequately gather Plaintiff's medical records, a charge which Prudential disputes, and that Prudential delayed in paying the LTD benefits owed for the initial duration period are irrelevant in determining the reasonableness of Prudential's decision to terminate White's LTD benefits. The Court must find Prudential's determinations reasonable and supported by substantial evidence.

12. A plan administrator is not required to reach the same conclusion as the SSA, even when the definition of disability in the policy is similar to that applied by the SSA. *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 975 (8th Cir.2003) (citations omitted); *Coker*, 281 F.3d at 798. In the present case, while the SSA did find White eligible for disability benefits, Prudential determined she was not disabled based primarily on the same restrictions found by the SSA. This difference in ultimate result is due to the slight differences between Prudential and the SSA in determining disability, and in any event, Prudential's determination is supported by substantial evidence.

### b. Denial Based on Benefit Limitation

Prudential also determined that pursuant to the Policy's Benefit Limitation section, White was no longer eligible to receive LTD benefits. Prudential determined, as an additional basis for denying benefits, that White's disability is "caused at least in part by a mental, psychoneurotic or personality disorder," whereas the Policy limits benefits for such disability to 24 months. Specifically, Prudential determined, based on the same record detailed above, that White's disability was caused at least in part by her severe depression.

■ There is ample evidence in the administrative record to support such a finding. In December 1997, White's son was shot to death and soon thereafter she began to experience symptoms of depression. In February 1998, White's treating physician, Dr. Richard Glenn, submitted paperwork in support of a leave of absence wherein he noted Plaintiff suffered from depression along with hypertension and high blood pressure. In November 1999, Dr. Timothy Olson diagnosed White with major depression following a psychiatric evaluation, noting she presented with depressive symptoms subsequent to her son's death and the death of her husband in a gunfight with police. Dr. Olson noted the depression had been present for the past two years.

Dr. Luros indicated that many of White's major limitations, such as headaches, muscle spasms, high blood pressure, sleep disturbances, and gastrointestinal symptoms, were a function of her continuing "depression secondary to the multiple stressors in her personal life." Dr. Luros opined that depression was White's most significant problem. The SSA decision also reflected its determination that White suffered from an affective disorder and a histrionic personality disorder which moderately limited her activities of daily living and markedly limited social functioning. Based on this evidence, Prudential determined White's disability was caused, at least in part, by her depression, and as a result she was ineligible to continue to receive LTD benefits pursuant to the Policy's Benefit Limitation section.

Plaintiff's rejoinder on this issue is limited to a few brief sentences wherein White asserts that *if* Prudential relied on evidence of depression in denying benefits, no expert opinion was obtained to demonstrate that fact, that Dr. Palakurthy's records showed depression controlled by medication, and that no competent evidence exists to establish this limitation applies.

While the Court need not reach this issue having already determined Prudential's decision to terminate LTD benefits based in the change in definition of "total disability" following the initial duration period, the Court has determined this benefit limitation provides an additional basis for denying White's claim for LTD benefits. Prudential's decision under this section is reasonable and supported by substantial evidence.

In summary, based on a review of the evidence in the record, the Court finds Prudential's determination was reasonable as it was made after a reasonable investigation of White's medical records, including a review by an independent medical examiner. *See Farfalla*, 324 F.3d at 974 (finding the plan exhibited ample reflection and judgment before denying claim where, among other facts, it sought independent physician review of plaintiff's records and nothing in records demonstrated plaintiff was entitled to benefits). Moreover, based on these facts and the administrative record before plan administrator, the decision to deny LTD benefits to White following the 24–month initial period is supported by more than a scintilla of evidence. Hence,

the Court concludes Prudential's decision is supported by " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir.2002) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), accord. *Delta–Family–Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 841 (8th Cir.2001)); *see also Farfalla*, 324 F.3d at 975 (finding plan's denial reasonable where there was no evidence that plaintiff's condition met plan definition, and where there was actually evidence to the contrary). Accordingly, the Court finds Prudential's decision was reasonable and Prudential did not commit an abuse of discretion in terminating White's LTD benefits effective July 26, 2000.

### 3. *De Novo* Review

Prudential argues it is entitled to summary judgment even under a *de novo* review. Because the Court has determined the appropriate standard is the abuse of discretion standard, no further analysis of this argument is necessary.

### CONCLUSION

For the foregoing reasons, the Court hereby **grants** Defendant's motion to limit the scope of the record to the administrative claims file (Clerk's No. 16) and **grants** Defendant's motion to strike (Clerk's No. 52). In addition, for the reasons detailed above, the Court **grants** Defendant's motion for summary judgment (Clerk's No. 27) and orders judgment be entered in favor of Defendant.

**IT IS SO ORDERED.**